<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **LEMONT LOVE, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**BOROUGH OF MILLTOWN, *et al.*,**<br><br>Defendants. | Civil Action No. 25-13816 (ZNQ) (JBD)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon three Motions: (1) Motion for Default Judgment filed by *pro se* Plaintiffs Jessica Love and Lemont Love (collectively, "Plaintiffs") on September 3, 2025 (ECF No. 12); (2) Motion to Dismiss and Vacate Default filed by Defendants Home Depot Store #0928, Home Depot U.S.A., Inc., and Christopher Slavin (collectively, "Home Depot Defendants") on September 12, 2025 (ECF No. 21); and (3) Motion to Dismiss filed by Defendants Borough of Milltown, Carmen DeLorenzo, Christopher Johnson, Milltown Police Department, Armando Rosario, Jr., Christopher Slavin, and Eric Wachenheim (collectively, "Milltown Defendants") on September 22, 2025 (ECF No. 26).[1]

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]

---

[1] It is not clear to the Court why the Home Depot Defendants and Milltown Defendants both claim to include Christopher Slavin, who is alleged to be a Loss Prevention Officer at Home Depot. Nevertheless, as will be discussed herein, Defendant Slavin will be dismissed from this action.

[2] Unless otherwise noted, references to "Rule" refer to the Federal Rules of Civil Procedure.

For the reasons set forth below, the Court will **DENY** Plaintiffs' Motion for Default Judgment, **GRANT-IN-PART** and **DENY-IN-PART** the Home Depot Defendants' Motion to Dismiss and Vacate Default, and **GRANT-IN-PART** and **DENY-IN-PART** the Milltown Defendants' Motion to Dismiss.

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      Procedural History

On June 4, 2025, Plaintiffs filed a Complaint against the Home Depot Defendants and Milltown Defendants in the Superior Court of New Jersey.  (ECF No. 1, Ex. A at 1.)  The Milltown Defendants then removed the action to this Court on July 28, 2025, and subsequently filed a Motion to Dismiss.  (ECF Nos. 1, 4.)  Thereafter, Plaintiffs filed a Motion to Amend the Complaint (ECF No. 5), which the Court granted on August 25, 2025 (ECF No. 8).  That same day, the Clerk's Office entered default against the Home Depot Defendants.

On September 3, 2025, Plaintiffs filed a Motion for Default Judgment against the Home Depot Defendants.  ("Default Judg. Mot.," ECF No. 12.)  A week later, Plaintiffs filed an Amended Complaint ("FAC") against all Defendants.  ("FAC," ECF No. 15.)  On September 12, 2025, the Home Depot Defendants filed a consolidated Motion to Dismiss, a Request to Vacate Default, and an Opposition to Plaintiffs' Motion for Default Judgment.  ("Home Depot Mot.," ECF No. 21.)  Plaintiffs filed an Opposition Brief to the Home Depot Defendants' Motion the next day.  ("Home Depot Opp.," ECF No. 22.)  The Home Depot Defendants did not file a Reply Brief.

On September 22, 2025, the Milltown Defendants filed a Motion to Dismiss.  ("Milltown Mot.," ECF No. 26.)  Two days later, Plaintiffs filed an Opposition Brief to the Milltown Defendants' Motion.  ("Milltown Opp.," ECF No. 29.)  The Milltown Defendants filed a Reply Brief on October 6, 2025.  ("Milltown Reply," ECF No. 32.)

### B.    Background

As alleged, Plaintiffs Lemont Love ("Mr. Love") and Jessica Love ("Mrs. Love") were at Home Depot on July 2, 2024, in Milltown, New Jersey. (FAC. ¶¶ 14, 28.) Mr. Love is African American and Mrs. Love is Hispanic. (*Id.* ¶¶ 1–2.) According to Plaintiffs, Mr. Love purchased merchandise from Home Depot and subsequently put those items in his vehicle. (*Id.*) Despite lawfully purchasing these items, Defendant Christopher Slavin ("Mr. Slavin") falsely accused Plaintiffs of shoplifting and called the police, an accusation Plaintiffs claim was racially motivated. (*Id.* ¶¶ 19, 31, 45.) There was apparently no basis for Mr. Slavin's accusations, and he did not observe Plaintiffs shoplifting. (*Id.* ¶ 19.) Although there is uncertainty over Mr. Slavin's identity, he is allegedly a Loss Prevention Officer at Home Depot.[3] (*Id.* ¶ 11.)

Eventually, Milltown Police Officers Armando Rosario, Carmen DeLorenzo, and Eric Wachenheim (the "Officer Defendants") arrived at the scene. (*Id.* ¶¶ 20–22.) Once at Home Depot, Officers Rosario and DeLorenzo stopped Plaintiffs and searched Mr. Love's car without his consent or a warrant. (*Id.* ¶¶ 15, 20–21, 30.) Officer Wachenheim approved of and supervised the search. (*Id.* ¶ 22.) During the search, at the direction of the Officer Defendants, Mr. Slavin identified items that had allegedly been stolen and removed them from Mr. Love's vehicle. (*Id.* ¶¶ 16, 23.)

According to Plaintiffs, they informed the Officer Defendants that they had lawfully purchased the merchandise and that the receipts for the items were located in the car. (*Id.* ¶ 43.)

---

[3] The Home Depot Defendants contend that Mr. Slavin is not, and has never been, employed by Home Depot. (Home Depot Mot. at 18.) Plaintiffs do not dispute this, but rather argue that they learned of Mr. Slavin's identity through their former attorney in a related criminal matter, and, based on that information, named him in this lawsuit. (*Id.*) Plaintiffs further contend that they should be allowed to amend the complaint with a "John Doe" until the Loss Prevention Officer involved in the underlying conduct is identified. For clarity and consistency within this Opinion, the Court will refer to the Loss Prevention Officer as "Mr. Slavin." However, as explained below in Section III(A)(3), the Court will permit Plaintiffs to amend the complaint and substitute "Mr. Slavin" with "John Doe – Loss Prevention Officer."

3

The Officer Defendants allegedly ignored this evidence and continued with the warrantless search and arrest of Plaintiffs.  (*Id.* ¶¶ 43–46.)

Plaintiffs further allege that Officer Wachenheim detained Mrs. Love and placed her in the back of a police vehicle with the windows rolled up and without air conditioning.  (*Id.* ¶ 34.)  At the time, Mrs. Love was pregnant, and the heat index was 86 degrees Fahrenheit.  (*Id.* ¶¶ 34–35.)  Plaintiffs contend that Mrs. Love's detention in a hot car endangered her and her fetus, and that she was displaying visible signs of heat exhaustion.  (*Id.* ¶¶ 34, 37.)  Allegedly, none of the Officer Defendants made an effort to provide Mrs. Love with medical attention and forced her to remain in the police car.

Plaintiffs were transported to police headquarters and charged with shoplifting.[4]  (*Id.* ¶ 28.)  These charges were ultimately dismissed after Plaintiffs filed a motion to suppress.  (*Id.* ¶ 25.)  Prosecutors conceded that the search of Mr. Love's car was unconstitutional and the state-court judge subsequently granted Plaintiffs' motion.  (*Id.* ¶¶ 25, 47.)

In the meantime, Mr. Love's car was impounded.  (*Id.* ¶ 48.)  When Mr. Love was able to retrieve his car, he noticed that numerous items were missing, including the receipts that showed the items had been lawfully purchased from Home Depot.  (*Id.* ¶ 48.)  According to Plaintiffs, Defendants intentionally concealed or destroyed this evidence to falsely arrest and prosecute Plaintiffs.  (*Id.* ¶ 52.)

As a result of this alleged conduct, Plaintiffs bring seventeen causes of action, which can be grouped into three categories: (1) federal constitutional claims brought under 42 U.S.C. § 1983

---

[4] It is not clear whether both Mr. Love and Mrs. Love were arrested and charged with shoplifting.  Some of the allegations only state that Mrs. Love was arrested, while others claim that "Plaintiffs" were arrested.  (FAC ¶¶ 55–56.)

and 42 U.S.C. § 1985 (Counts I–IIIA, X, XIII, XIV); (2) state constitutional and statutory claims (Counts IV, IX); and state tort claims (Counts V–VIII, XI, XII, XV, XVI).

## II.    <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.    <u>DISCUSSION</u>

### A.    **Home Depot Defendants' Motion**

The Home Depot Defendants raise several arguments in their Motion.  First, the Home Depot Defendants contend that the Court should dismiss the FAC for insufficient service of process pursuant to Rule 12(b)(2) and 12(b)(5).  Second, the Home Depot Defendants argue that the Court should vacate the Clerk's entry of default and deny Plaintiffs' Motion for Default Judgment.  Third, the Home Depot Defendants argue that the Court should dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6).  The Court will address each in turn.

#### 1.    <u>Service of Process</u>

The Home Depot Defendants argue that the Court should dismiss the FAC for insufficient service of process pursuant to Rule 12(b)(2) and 12(b)(5).  Under Rule 12(b)(2), a court may dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  A court's exercise of personal jurisdiction over a defendant requires, at a minimum, the plaintiff to comply with the procedural requirements of service. *See Anderson v. ZFC Legal Title. I*, Civ. No. 16–1499, 2016 WL 7408846, at *2 (D.N.J. Dec. 22, 2016) (citing *Omni Cap. Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Under Rule 12(b)(5), "a party may file a motion asserting insufficient service of process as a defense." *Id.*  "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity." *Id.* (quoting *Laffey v. Plousis*,

Civ. No. 05-2796, 2008 WL 305289, at *3 (D.N.J. Feb. 1, 2008), *aff'd*, 364 F. App'x 791 (3d Cir. 2010)).

Rule 4(e) states that individuals may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under New Jersey law, the method for obtaining service over an individual is "by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf." N.J. Ct. R. 4:4-4(a)(1).

Corporations may be served by following "the manner prescribed by Rule 4(e)(1) for serving an individual," or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1). Under New Jersey law, corporations may be served:

> [B]y serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

6

N.J. Ct. R. 4:4–4(a)(6).  The burden of establishing proper service is on the party asserting the validity of service, in this case Plaintiffs.  *See Poretskin v. Chanel, Inc.*, Civ. No. 23-22613, 2024 WL 714232, at *2 (D.N.J. Jan. 29, 2024).

Here, Plaintiffs filed a certificate of service indicating that the Summons and Complaint for the Home Depot Defendants were served on Sylvia Taylor, whom Plaintiffs assert is a "managing agent" authorized to accept service.  (ECF Nos. 22-2–22-4.)  However, the record does not establish that Ms. Taylor was a managing or general agent authorized to accept service on behalf of Home Depot.  Indeed, her identity and role within the company remain unclear. Plaintiffs' briefing suggests that Ms. Taylor may have been merely an employee at a Home Depot store in Milltown (Home Depot Opp. at 2), but such status alone is insufficient to demonstrate that she qualifies as a managing agent of Home Depot, Inc., a Delaware corporation.  (ECF No. 21-6.) Accordingly, the Court cannot conclude that Plaintiffs properly served Home Depot or the Home Depot Store.

With respect to Mr. Slavin, Plaintiffs likewise claim that service was proper because they served the Summons and Complaint with Ms. Taylor.  (ECF No. 22-4.)  But there is no evidence that Ms. Taylor was authorized to accept service on behalf of Mr. Slavin, or that Mr. Slavin was served personally.  Accordingly, Plaintiffs have also failed to properly serve Mr. Slavin.

Despite the improper service, the Court declines to dismiss the FAC.  As explained by the Third Circuit, "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained."  *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).  And under Rule 4(m), a court must extend the time for service if the plaintiff shows good cause.  Fed. R. Civ. P. 4(m).  Here, Plaintiffs have made reasonable (although faulty) attempts to serve the Home Depot Defendants.  In light of Plaintiffs' pro se status and their mistaken belief as to the

7

validity of service, the Court finds that good cause exists for an extension of time to effectuate service. Accordingly, the Court will extend the time for service to be made as to the Home Depot Defendants by an additional 45 days from the date of this Opinion.[5]

### 2.    Vacating the Clerk's Entry of Default

Next, the Home Depot Defendants argue that the Court should vacate the Clerk's entry of default and deny Plaintiffs' Motion for Default Judgment because they were not properly served. (Milltown Mot. at 10–11.)

Given that the Court has determined that Plaintiffs did not properly serve the Home Depot Defendants, the Court will **VACATE** the Clerk's entry of default and **DENY** Plaintiffs' Motion for Default Judgment.

### 3.    Failure to State a Claim

The Home Defendants also argue that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. According to the Home Depot Defendants, Mr. Slavin has never been employed by Home Depot, and any claims against him must be dismissed. (Home Depot Mot. at 19.) They further contend that the FAC fails to set forth any facts or omissions by Defendant Home Depot, and must likewise be dismissed.

Plaintiffs do not dispute that Mr. Slavin may not have been the Home Depot employee involved in the underlying dispute. (Home Depot Opp. at 8.) According to Plaintiffs, they learned of Mr. Slavin's identity through their former attorney in the related criminal matter and, based on that information, named him in this lawsuit. (*Id.*) Given the uncertainty regarding the identity of the employee at issue, Plaintiffs concede that Mr. Slavin may be dismissed from this action. (*Id.*) However, Plaintiffs request that he be replaced with a "John Doe Loss-Prevention Officer" until

---

[5] The Court has since granted Plaintiffs' request to proceed *in forma pauperis* and for service by the U.S. Marshals Service. (ECF No. 27.) Plaintiffs should proceed with service accordingly.

the proper individual is identified.  Accordingly, Mr. Slavin will be **DISMISSED** from this matter and substituted with "John Doe Loss-Prevention Officer."

As to the remaining Home Depot Defendants, the FAC adequately alleges that a Home Depot employee engaged in unlawful conduct.  (FAC ¶¶ 16, 17, 19, 28, 31, 45.)  Although the Home Depot Defendants contend that only two allegations are asserted against them, this argument appears to rely on the original complaint rather than the FAC.  Indeed, their Motion incorrectly cites allegations in the original complaint, not the FAC.  (Home Depot Mot. at 18–19.)  Nor do the Home Depot Defendants identify any substantive legal authority supporting their position that the FAC fails to state a claim.  As the moving party, the Home Depot Defendants bear the burden of establishing entitlement to dismissal, and it is not the Court's role to construct legal arguments on their behalf.  *See Davis v. OneBeacon Ins. Group*, 721 F. Supp. 2d 329, 338 (D.N.J. 2010) ("The defendant bears the burden of showing that no claim has been presented.").  Because the Home Depot Defendants have cited no legal authority warranting dismissal, and simultaneously seek dismissal of the original complaint rather than the FAC, their motion to dismiss pursuant to Rule 12(b)(6) will be **DENIED**.

### B.   Milltown Defendants' Motion

The Milltown Defendants advance several arguments in their Motion, which the Court addresses below.  As a threshold matter, however, Plaintiffs concede a number of those arguments. First, Plaintiffs agree that the Milltown Police Department should be dismissed as duplicative of the Borough of Milltown.  (Milltown Opp. at 2.)  Second, Plaintiffs concede that the claims against the Officer Defendants should be dismissed to the extent they are asserted against the officers in their official capacity.  (*Id.* at 3.)  Although Plaintiffs request that these dismissals be without prejudice, the Court concludes that further amendment of the FAC would be futile.  Accordingly,

the claims in the FAC are **DISMISSED WITH PREJUDICE** as to the Milltown Police Department, and as to Defendants Armando Rosarior Jr., Eric Wachenheim, Carmen DeLorenzo, and Christopher Johnson to the extent the claims against them are asserted in their official capacities. The Court now turns to the remaining arguments raised in the Milltown Defendants' Motion.

### 1. Whether the FAC Engages in Improper Group Pleading

The Milltown Defendants argue that Count III and III-A must be dismissed because Plaintiffs have engaged in improper group pleading. (Milltown Mot. at 12–13.) Rule 8(a)(2) requires a short and plain statement setting forth claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2), (3). As a general rule, group pleading is not permitted. It occurs when a complaint "fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Richardson v. EzriCare, LLC*, Civ. No. 23-3498, 2024 WL 4349687, at *4 (D.N.J. Sept. 30, 2024) (quoting *Foulke v. Twp. of Cherry Hill*, Civ. No. 23-02543, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024)). The result is a pleading in which "it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (quoting *Innovative Cosm. Concepts, LLC v. Brown Packaging, Inc.*, Civ. No. 18-5939, 2020 WL 7048577, at *2 (D.N.J. Apr. 28, 2020)).

The Court finds that the FAC is not an impermissible group pleading. When reading the FAC as a whole, the Court is able to discern which Defendants committed which actions. As Plaintiffs point out in their Opposition Brief, the FAC alleges that Defendant Rosario responded to the scene and participated in the stop and warrantless search. (FAC ¶¶ 20, 32.) The FAC also alleges that Defendant DeLorenzo assisted in the stop and was involved in the search of the vehicle. (*Id.* ¶ 21.) Simply because the FAC contains overlapping allegations against each Defendant for

engaging in similar conduct does not render it a group pleading.  *See Kyle K. v. Chapman*, 208 F.3d 940, 943–44 (11th Cir. 2000); *see also Watson v. Mercer County*, Civ. No. 23-23318, 2026 WL 562790, at *9 (D.N.J. Feb. 27, 2026) ("While this case involves overlapping allegations, overlapping allegations do not transform a complaint into an improper group pleading, and, in fact, a plaintiff may permissibly allege that multiple defendants undertook the same action.").  Indeed, the FAC places each Defendant on notice of the claims against him and specifies the alleged conduct he engaged in.  The Court is therefore satisfied that the FAC distinguishes which party "had distinct roles in the alleged misconduct" and "which defendants engaged in what wrongful conduct."  *Falat v. Cnty. Of Hunterdon*, Civ. No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

### 2.    Claims against Chief Johnson

The Milltown Defendants next assert that the § 1983 claims against Chief Johnson should be dismissed because the FAC is devoid of allegations concerning his personal involvement in the underlying conduct.  (Milltown Mot. at 14–17.)  As alleged, Chief Johnson is the Chief of Police for the Milltown Police Department.  (FAC ¶ 8.)  In that role, he is "responsible for supervising the department, setting internal policy, training officers, ensuring lawful conduct, and responding to civilian complaints."  (*Id.*)  Plaintiffs contend that Chief Johnson "failed to adequately train, discipline, supervise, or take corrective action against subordinate officers involved in the unlawful search, arrest, and mistreatment of Plaintiffs, and permitted a culture of racial profiling, reckless policing, and constitutional violations to persist."  (*Id.*)  Plaintiffs further allege that Chief Johnson knew about Officers Rosario, DeLorenzo, and Wachenheim's unconstitutional practices, but failed to intervene, discipline, retrain, or remove these officers.  (*Id.* ¶ 54.)  As a result of this conduct, Plaintiffs allege that Chief Johnson has supervisory liability under 42 U.S.C. § 1983.  (FAC, Count XIII.)

11

To a state a claim for supervisory liability under 42 U.S.C. § 1983, the plaintiff must allege that the supervisors either "established and maintained a policy, practice or custom which directly caused the constitutional harm," or that they "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (citation modified). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). To sufficiently allege knowledge and acquiescence, a plaintiff must provide facts suggesting that the defendant supervisor "had contemporaneous, personal knowledge of [the alleged violations] and acquiesced in it." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the FAC contains no facts showing that Chief Johnson directly participated in or directed others to violate Plaintiffs' constitutional rights. The FAC is also devoid of facts showing that Chief Johnson knew of and acquiesced to his subordinates' constitutional violations. Indeed, Plaintiffs' allegations are entirely conclusory, merely stating that Chief Johnson received complaints about Officers Rosario, DeLorenzo and Wachenheim and that he failed to discipline them. (FAC ¶ 54.) The FAC does not elaborate any further on what those complaints were, when they occurred, or who made them. Based upon this conclusory allegation, Plaintiffs assert that Chief Johnson ratified the Officers' conduct and permitted them to continue abusing their authority. (*Id.*) These are precisely the kind of conclusory allegations that fail to state a claim upon which relief can be granted. *See O'Neal v. Middletown TP*, Civ. No. 18-5269, 2019 WL 77066, at \*7 (D.N.J. Jan. 2, 2019) (dismissing claims where the plaintiff alleged that the police chief "had prior notice of similar incidents and violations" because they were "nothing but bare conclusory allegations"); *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J.

12

2017) (holding police chief's knowledge of prior incident involving subordinate officer was insufficient to show that he had knowledge of or acquiesced in the unlawful conduct). Nor do Plaintiffs allege facts concerning a specific policy, practice or custom that Chief Johnson established or maintained that led to the alleged constitutional violations. Accordingly, Plaintiffs' supervisory liability claim (Count XIII) against Chief Johnson will be **DISMISSED WITHOUT PREJUDICE**.[6]

### 3.    Whether the Officer Defendants are Entitled to Qualified Immunity

The Milltown Defendants also argue that the Officer Defendants are entitled to qualified immunity for the claims brought under 42 U.S.C. § 1983 (Counts I-IIIA), the New Jersey Constitution (Count IV), New Jersey state law (Count V), the New Jersey Civil Rights Act ("NJCRA") (Count IX), and 42 U.S.C. § 1985(3) (Count X). (Milltown Mot. at 18–25.) Qualified immunity shields police officers from liability unless they violated clearly established rights. To determine if an officer's conduct is entitled to qualified immunity, courts ask first, "whether the defendant's conduct violated a statutory or constitutional right," and second, "whether the right at issue was clearly established when the conduct took place." *White v. City of Vineland*, 500 F. Supp. 3d 295, 304–05 (D.N.J. 2020) (citing *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018)).

For a constitutional right to be clearly established, it "must be defined with a 'high degree of specificity.'" *Dennis v. City of Phila.*, 19 F.4th 279, 288 (3d Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see Summerville v. Fuentes*, Civ. No. 19-3240, 2021

---

[6] The Milltown Defendants also argue that the remaining claims, to the extent they are brought against Chief Johnson, should be dismissed because there are no allegations that he was personally involved in any of the underlying conduct. (Milltown Mot. at 17.) The Court agrees. Because the only allegations relating to Chief Johnson involve his supervisory liability, to the extent any of the remaining claims are brought against him, they will be **DISMISSED WITHOUT PREJUDICE**.

WL 4129563, at *2 (3d Cir. Sept. 10, 2021).  "[C]ourts are 'not to define clearly established law at a high level of generality.'"  *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  To accept too broad a version of the right at issue would "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  A court is thus required to frame the right at issue "in a more particularized, and hence more relevant, sense", in light of the case's specific context, not as a broad general proposition.  *Id.* at 640.  The confines of a clearly established constitutional right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation modified); *see Summerville*, 2021 WL 4129563, at *2.

"[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'"  *James v. New Jersey State Police*, 957 F.3d 165, 170 (3d Cir. 2020) (quoting *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018)); *District of Columbia*, 583 U.S. at 63 ("The rule must be 'settled law' . . . which means it is dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'").  "Qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).

In the FAC, Plaintiffs assert claims related to unlawful search (counts I, IV), false arrest (counts II, V), malicious prosecution (counts III, VI), fabrication of evidence (count III-A), violations of the NJCRA (count IX), and a race-based conspiracy to deprive Plaintiffs of equal rights under 42 U.S.C. § 1985 (count X).  Based on the allegations in the FAC, Plaintiffs have

sufficiently alleged a violation of each constitutional right, and each of these rights was clearly established at the time of Plaintiffs' arrest.

With respect to Plaintiffs' claims for the allegedly unlawful search, the Supreme Court has held that law enforcement may search any area of a vehicle where evidence could reasonably be found, provided there is probable cause to believe the vehicle contains evidence of criminal activity. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009). Similarly, law enforcement may only arrest an individual if there is probable cause to believe that individual committed a crime. *See Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007). A malicious prosecution claim, likewise, requires a defendant to establish that law enforcement did not have probable cause to bring a charge. *See id.* Thus, as to these claims, the Court must determine whether the Officer Defendants had probable cause.

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). An arresting officers' subjective beliefs at the time of the arrest are irrelevant; all that matters is whether the objective facts establish that probable existed to believe that a crime had been committed. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). In conducting this analysis, courts look at the totality of the circumstances. *See District of Columbia*, 583 U.S. at 57.

In its Motion, the Milltown Defendants contend that the Officer Defendants had probable cause to search and arrest Plaintiffs based on the information they received from Home Depot's loss prevention officer, Mr. Slavin. (Milltown Mot. at 21.) According to the Milltown Defendants,

a tip from an anonymous source establishes probable cause to arrest and detain the target of the tip.  (*Id.*)

But the existence of the tip from Mr. Slavin is only one fact that is alleged to have been within the Officer Defendants' knowledge.  As alleged, Plaintiffs pointed the Officer Defendants to the receipts for the items purportedly stolen.  (FAC ¶ 17.)  The Officer Defendants then allegedly confiscated and destroyed the receipts in an effort to manufacture criminal charges against Plaintiffs.  (*Id.* ¶¶ 17, 30, 50–53.)  Moreover, none of the Officer Defendants conducted any meaningful investigation into whether Plaintiffs had stolen the items, instead relying solely on Mr. Slavin's unsubstantiated claims and destroying exculpatory evidence.  (*Id.* ¶¶ 32, 43.)  Based on this conduct, the Officer Defendants searched Mr. Love's car without a warrant, arrested Plaintiffs, and charged them with shoplifting.  (*Id.* ¶¶ 24–26.)  These charges were later dismissed.  (*Id.* ¶ 25.)

In light of the foregoing, the FAC plausibly alleges that the Officer Defendants lacked probable cause to search the vehicle or arrest Plaintiffs, and that the shoplifting charges were initiated only after the destruction of exculpatory evidence.  Indeed, the presentation of exculpatory evidence (i.e., the receipts), undermines the notion Plaintiffs committed any crime.  Plaintiffs have therefore adequately alleged a violation of their constitutional rights.  Moreover, existing caselaw clearly establishes that law enforcement may not conduct a warrantless search of a vehicle, or arrest and prosecute an individual, without probable cause.  *See Evans v. Newark City*, 152 F. 4th 537, 546 (3d Cir. 2025) (arrest and prosecution without probable cause violates clearly established constitutional right); *Fong v. City of Newark*, Civ. No. 22-7243, 2023 WL 8947378, at *7 (D.N.J. Dec. 28, 2023) ("The constitutional right to be free from warrantless searches has been so clearly

established that a reasonable officer would have understood that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment.")

As to the fabrication/destruction of evidence claim, Plaintiffs allege that the Officer Defendants stole and intentionally destroyed the receipts for the items Plaintiffs purchased from Home Depot.  Although not specified, the Court construes this claim to allege a violation of Plaintiffs' due process rights under the Fourteenth Amendment.  Accepting the FAC's allegations as true, the Officer Defendants are not entitled to qualified immunity on this claim either.  *See Yarris v. Cnty. of Delaware*, 465 F.3d 129, 142 (3d Cir. 2006).  First, it is clear that the FAC adequately alleges that the Officers violated Plaintiffs' due process rights by intentionally destroying the receipts, which undoubtedly would have exonerated Plaintiffs.  *See United States v. Wilcox*, Civ. No. 06-445, 2007 WL 2461820, at *6 (E.D. Pa. Aug. 28, 2007) ("The Police violate a Defendant's due process rights if, acting in bad faith, they destroy evidence with apparent exculpatory value.")  Second, it is clearly established that law enforcement may not destroy exculpatory evidence.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

The Officer Defendants also contend that they are entitled to qualified immunity on Plaintiffs' claim under 42 U.S.C. § 1985(3).  (Milltown Mot. at 25.)  However, their argument rests entirely on the assertion that the Officers had probable cause to conduct a warrantless search of Plaintiffs' vehicle and to arrest them for shoplifting.  Because the FAC adequately alleges that the Officers lacked probable cause, the Court rejects the Officer Defendants' qualified immunity defense as to the § 1985(3) claim as well.  Moreover, given that the Officer Defendants are not entitled to qualified immunity for their federal constitutional claims, they are similarly not entitled to qualified immunity for the state constitutional claims.  *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) (holding that the claims under the New

17

Jersey Constitution and New Jersey Civil Rights Act trigger the same legal elements and principles as Federal Constitutional Claims).  Accordingly, Counts I–V, IX, and X will be allowed to proceed against the Officer Defendants in their individual capacities.

4.    Whether Plaintiffs' State Law Tort Claims Must be Dismissed

Next, the Milltown Defendants contend that the state-law tort claims against them should be dismissed because Plaintiffs did not file a notice of tort claim pursuant to the New Jersey Tort Claims Act ("NJTCA").  (Milltown Mot. at 26.)  Pursuant to the NJTCA, "a claimant must file a notice of claim upon a public entity or public employee 'not later than the ninetieth day after accrual of the cause of action.'"  *McDade v. Siazon*, 208 N.J. 463, 468 (2011) (quoting *N.J.S.A.* 59:8-8).  A notice of claim must be filed directly with the entity at issue.  *See id.* at 476.

If a claimant fails to file a notice of claim with the public entity within 90 days of accrual of the claim, the "claimant shall be forever barred from recovering against a public entity or public employee," unless the claimant can show that "extraordinary circumstances" exist for the failure to file the claim and that the public entity or public employee will not be "substantially prejudiced." *N.J.S.A.* 59:8-8–9; *see also Rogers v. Cape May Cnty. Office of Public Defender*, 208 N.J. 414, 427 (2011).  Moreover, after 90 days has passed, the NJTCA requires the claimant to file an "[a]pplication to the court for permission to file a late notice of claim." *N.J.S.A.* 59:8–9.  The application must be "supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to" timely file the notice of claim. *Id.*

Here, Plaintiffs assert that they filed a notice of claim on May 28, 2025, two days after the dismissal of the criminal charges.  (Milltown Opp. at 6.)  However, that notice was submitted to the State of New Jersey, Department of Treasury.  (Milltown Opp., Ex. A.)  Because Plaintiffs bring their claims against the Borough of Milltown and its employees, they were required to serve

their notice of claim with Milltown, not the State.  As the New Jersey Supreme Court made clear in *McDade*, service on the wrong public entity does not "absolve plaintiffs of the obligation to . . . serve a timely notice of claim" with the correct entity.  208 N.J. at 479.  Courts have consistently applied this rule to dismiss claims where plaintiffs filed notices with the incorrect entity.  *See McNellis-Wallace v. Hoffman*, 464 N.J. Super. 409, 420 (N.J. Super. Ct. App. Div. 2020); *Murphy v. Cnty. of Ocean*, 2012 WL 3021087, at *3 (N.J. Super. App. Div. July 25, 2012).  Accordingly, Plaintiffs' state-law tort claims (Counts V, VI, VII, VIII, XI, XII) against the Milltown Defendants will be **DISMISSED WITHOUT PREJUDICE**.  Should Plaintiffs wish to renew their state law claims, they must first file the appropriate application as outlined in N.J.S.A. § 59:8-8–9.

### 5.    Declaratory and Injunctive Relief

Finally, the Milltown Defendants assert that Plaintiffs' request for declaratory and injunctive relief should be dismissed because it is not an appropriate remedy.  (Milltown Mot. at 29–30.)  However, at this stage of the proceeding, the Court need not decide whether this remedy is appropriate.  If Plaintiffs ultimately succeed on any of their claims, the Court will determine the appropriate remedy at such time.  Accordingly, the Milltown Defendants' request to deny Plaintiffs' requests for declaratory and injunctive relief is **DENIED**.

IV.     **CONCLUSION**

For the reasons stated above, the Court will **DENY** Plaintiffs' Motion for Default Judgment, **GRANT-IN-PART** and **DENY-IN-PART** the Home Depot Defendants' Motion to Dismiss, and **GRANT-IN-PART** and **DENY-IN-PART** the Milltown Defendants' Motion to Dismiss.  An appropriate Order will follow.


Date: April 28, 2026

        s/ Zahid N. Quraishi
        **ZAHID N. QURAISHI**
        **UNITED STATES DISTRICT JUDGE**